## Megary's Estate.

*Will—Form of will—Testamentary paper—Probate.*

No formal words are necessary in order to make a valid will; the form of the instrument is immaterial, if its substance is testamentary. A gift or bequest after death is of the very essence of a will, and determines a writing, whatever its form, to be testamentary. Whether a writing is a will or not, does not depend upon the maker's declaring it to be a will at the time he executes it, but upon its contents.

A paper duly executed in conformity with the Wills' Act was offered for probate as follows: " To whom it may concern: This is to certify that in consideration of the fact that my step-daughter has shared her home with me and attended to my business, correspondence &c., for me since the decease of my husband, and that she has made no charge for said courtesies during said period of time, Now, therefore, be it known that I desire and so affirm that my said step-daughter shall receive as compensation for said services out of my estate a sum of money or its equivalent that shall aggregate two thousand dollars—the aggregate amount of one hundred dollars per year for a period of twenty years to date. I also wish it to be understood that the above mentioned compensation shall not affect any right that she may have as devised to her in any will or testament of mine that may be in force at the time of my decease." It appeared that the amount mentioned in the paper was about half the estate which consisted of railroad and other stocks. The paper was delivered to the stepdaughter, and remained in her possession until the stepmother's death. *Held*, that the paper was testamentary in character, and should have been admitted to probate.

The delivery of a testamentary paper to the person beneficially inter-

ested, where no present interest passes, does not destroy the testator's power of revocation. It is still ambulatory; to take effect only after death in case it is not revoked.

Argued April 27, 1903. Appeal, No. 287, Jan. T., 1902, by Anna J. Megary Ege, from decree of O. C. Cumberland Co., dismissing appeal from register of wills in estate of Sarah Megary. Before MITCHELL, DEAN, FELL, MESTREZAT and POTTER, JJ. Reversed.

Appeal from register of wills refusing to admit paper to probate.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was in dismissing the appeal.

*F. E. Beltzhoover* and *E. M. Biddle, Jr.*, with them *H. M. Zug*, for appellant.—No formal words are necessary to make a will if the substance be testamentary. A gift or bequest after death is of the essence of a will and determines the writing to be testamentary. Whether a writing is a will does not depend upon the maker declaring it so when he executes it but upon its contents: Protestant v. English, 71 Pa. 454; Cover v. Stem, 67 Md. 449; Habergham v. Vincent, 2 Ves. Jr. 204; Turner v. Scott, 51 Pa. 126; Frew v. Clarke, 80 Pa. 170; Schads's App., 88 Pa. 111; Wilson v. Van Leer, 103 Pa. 600; Fosselman v. Elder, 98 Pa. 159; Rose v. Quick, 30 Pa. 225; Frederick's App., 52 Pa. 338; Tozer v. Jackson, 164 Pa. 373; Knox's Est., 131 Pa. 220; Ferris v. Neville, 54 L. R. A. 464; Clarke v. Ransom, 50 Cal. 595; Woods's Est., 36 Cal. 75; Byers v. Hoppe, 61 Md. 206.

*Conrad Hambleton*, of *Wetzel & Hambleton*, with him *J. G. Fletcher, F. H. Hoffer, W. J. Zacharias* and *Gillan & Gillan*, for appellees.—The paper was not testamentary in character: Rose v. Quick, 30 Pa. 225; Turner v. Scott, 51 Pa. 126; Frederick's App., 52 Pa. 338; Frew v. Clark, 80 Pa. 170; Schad's App., 88 Pa. 111; Fosselman v. Elder, 98 Pa. 159; Wilson v. Van Leer, 103 Pa. 600; Fouche's Est., 147 Pa. 395; Kisecker's Est., 190 Pa. 476; Harrison's Est., 196 Pa. 576; Knox's Est., 131 Pa. 220; Tozer v. Jackson, 164 Pa. 373.

The instrument is not testamentary because it is not ambula-
tory or revocable in its nature: Rudy v. Ulrich, 69 Pa. 177;
Bradish v. McClellan, 100 Pa. 612.

OPINION BY MR. JUSTICE MESTREZAT, May 18, 1903:

This is an appeal from the decree of the court below dismiss-
ing an appeal from the decision of the register of wills, re-
fusing to admit to probate the following written instrument:

"To whom it may concern:

"This is to certify that in consideration of the fact that my
step-daughter Anna J. Megary Ege has shared her home with
me and attended to my business, correspondence &c., for me
since the decease of my husband, William C. Megary, and that
she has made no charge for said courtesies during said period
of time.   Now, therefore, be it known that I, Sarah Megary,
desire and so affirm that my said step-daughter shall receive as
compensation for said services out of my estate a sum of money
or its equivalent that shall aggregate two thousand dollars—
the aggregate amount of one hundred dollars per year for a
period of twenty years to date.

"I also wish it to be understood that the above mentioned
compensation shall not affect any right that she may have as
devised to her in any will or testament of mine that may be in
force at the time of my decease.

"Witness my hand and seal this twenty-third day of No-
vember, A. D. 1899.

"Witnesses:                  SARAH MEGARY.   [Seal]"

"L. A. BROWNAWELL.

"MRS. MARY FRYMIER.

It is shown by the testimony of the two subscribing witnesses
that the paper was signed by Mrs. Megary in their presence
when she was of sound mind.   It is conceded that the instru-
ment was executed in conformity with the Wills' Act of 1833,
and it is not alleged that Mrs. Megary at the time lacked tes-
tamentary capacity or was influenced in any way in signing
the paper.   The register refused to admit the writing to pro-
bate on the ground that it was not a testamentary disposition
of property.   The correctness of this interpretation of the paper
by the register, approved by the court below, is the single ques-
tion for consideration here.

At the time she executed the instrument Mrs. Megary had passed her eighty-sixth year. She was a widow without children and for more than a quarter of a century, during her widowhood, had made her home with Mrs. Ege, the only child of her husband by a former marriage. From the testimony returned with the record, it is apparent that the amount named in the paper offered for probate was at least half of her estate, which consisted of railroad and other stocks. The writing was signed at the residence of Mrs. Ege on one.occasion when Mrs. Megary was leaving home to make a visit to some of her friends.

We have no doubt that the paper in question is testamentary in character. Its language and the circumstances surrounding its execution and preservation lead to the conclusion that Mrs. Ege was not to receive the $2,000 until after Mrs. Megary's death. While it recognizes the kindness of Mrs. Ege in gratuitously sharing her home with Mrs. Megary since the death of the latter's husband and the desire to compensate Mrs. Ege for her services, yet there is no acknowledgment of an existing liability nor a promise to pay any sum for the courtesies extended to her by her stepdaughter. No present interest in or claim on the $2,000 passed to Mrs. Ege by any provision of the instrument, and hence, no action could have been maintained by her against Mrs. Megary in the latter's lifetime to recover the money. Omitting from the second paragraph, the operative and disposing part of the instrument, the words which may be treated as surplusage, that paragraph reads as follows: " I, Sarah Megary, desire and so affirm that my said step-daughter shall receive out of my estate a sum of money or its equivalent that shall aggregate two thousand dollars." Stripped of verbiage, such is the operative language of the paper under consideration. It expresses no intention to assume a personal liability. It is a command to the parties to whom it is addressed who are evidently the persons interested in the settlement and distribution of Mrs. Megary's estate after her death that the beneficiary named in the instrument shall at that time receive the money out of the estate. The words "shall receive " plainly denote a disposition of the subject-matter to take effect or become operative in the future. They bear no other reasonable interpretation. We think it is clear from the context that the term " estate "

refers to the property that the maker of the paper should possess at the time of her death. The entire language of the clause in question excludes the idea of an intention to create a present indebtedness or to assume any liability whatever.

Aside from the instrument itself, the circumstances surrounding its execution and preservation sustain the position that its operation was to be postponed until after the death of the maker. The principal of Mrs. Megary's estate was small and the income derived from it was scarcely sufficient to support her if she lived in the most economical manner. Without a clear intention expressed to the contrary, it cannot be presumed that she intended in the paper in question to dispose of her property without any consideration and thus deprive herself of the means of her own support. Such, however, is the effect of the appellee's interpretation of this paper, as it was either a legal obligation for the payment of $2,000, or a testamentary disposition of it.

It is urged by the learned counsel for appellee that the instrument was given as an obligation to secure payment for services rendered and was delivered to Mrs. Ege, who retained possession of it until Mrs. Megary's death, and that, therefore, it was irrevocable and hence not testamentary. As already observed, neither the instrument itself nor the circumstances surrounding its execution and preservation justifies the conclusion that it created an obligation on the part of Mrs. Megary to pay Mrs. Ege $2,000. And the fact of its delivery to Mrs. Ege and that she had the possession of it, does not destroy its revocability. "It has never been supposed," says PAXSON, J., in Wilson v. Van Leer, 103 Pa. 600, "that the delivery of a testamentary paper to the person beneficially interested, where no present interest passes, destroyed the testator's power of revocation. It is still ambulatory; to take effect only after death in case it is not revoked."

It is also contended that the last paragraph of the paper shows that the instrument was not testamentary but an obligation for the payment of the sum named in it. We do not think that clause of the instrument sustains the contention. It is merely precautionary and was intended to disclose the intention that Mrs. Ege should receive out of Mrs. Megary's estate after her death, not only the $2,000, but any additional sum that

might be given her by "any will of mine that may be in force at the time of my decease." Any bequest to Mrs. Ege in a subsequent will in force at the testatrix's death was to be regarded as cumulative to the one given her in this instrument.

As a will, this paper is irregular in form and was most inartificially drawn. These facts, however, will not deprive it of its testamentary character, if it is a disposition of property to take effect after death. As said by WILLIAMS, J., in Patterson v. English, 71 Pa. 454: "No formal words are necessary in order to make a valid will; the form of the instrument is immaterial, if its substance is testamentary. A gift or bequest after death is of the very essence of a will, and determines a writing, whatever its form, to be testamentary. Whether a writing is a will or not, does not depend upon the maker's declaring it to be a will at the time he executes it, but upon its contents." The instrument in question was clearly a disposition of property to take effect after death and was, therefore, of a testamentary character. Hence, the refusal to admit it to probate was error.

The decree of the court below and the decision of the register of wills are reversed, and it is now ordered, adjudged and decreed that the register admit to probate, when duly proven, the paper dated November 23, 1899, and signed by Sarah Megary, the costs of this appeal to be paid by the appellees.